# The City of Chicago

*v.*

# Mary Ann Gallagher, Administratrix, etc.

| 44 | 295 |
| 29a | 502 |
| 44 | 295 |
| 37a | 369 |
| 44 | 295 |
| 39a | 430 |
| 44 | 295 |
| 62a | 251 |
| 44 | 295 |
| 165 | 380 |

1. Negligence — *what constitutes — corporations making improvements must render them safe to the public.* In an action brought by G. against the city of Chicago, for the loss of her husband's life, caused by falling into a slip, it appearing by the proof that the slip was crossed by a bridge much narrower than the street, and that there was no protection in the course from the sidewalk to the bridge to prevent persons proceeding in that direction from falling into it, if they continued in a direct line from the walk to the slip, — *held,* that the omission to erect proper barriers to protect persons from walking or falling into it, was negligence for which the city was liable for all damages resulting therefrom.

2. Same. The city having permitted the excavation to be made, it was its duty to have made it secure, and fully protected persons in passing from walking or falling into it under any circumstances.

3. Same — *when improvement made is not within corporate limits — duty to protect it the same.* And even it had been a natural channel, or one made before the limits of the city were extended so as to embrace it, the duty to have rendered it safe to the public would have been the same.

4. Evidence — *of noxious condition of water — admissible.* And in such case, proof of the noxious condition of the water is admissible to show that by reason of its condition the danger to the life of a person falling into it would thereby be enhanced.

5. NEGLIGENCE—*when degree of—increased.* And the failure to properly protect such a place, establishes a greater degree of negligence than if the water had been free from such pollution.

APPEAL from the Superior Court of Chicago.

The facts in this case are fully stated in the opinion.

Mr. S. A. IRVIN, for the appellant.

Messrs. HOYNE, HORTON & HOYNE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action brought by Mary Ann Gallagher, as administratrix of Michael Gallagher, against the city of Chicago, under the statute, for the loss of the life of her husband by the negligence of the city, in failing to secure the crossing at Ogden's slip, at one of the street crossings in the city. The case was twice tried in the court below, the jury on each trial finding the issues for appellee. On the first trial the damages were assessed at $1,000, but a new trial was granted by consent. On the second trial the jury assessed the damages at $2,000. A motion for a new trial was entered and subsequently overruled, and judgment rendered on the verdict, to reverse which, the case is brought to this court by appeal, and numerous errors assigned.

It is insisted, that the evidence fails to show, that the city was guilty of any negligence contributing to the death of appellee's intestate. On the other side it is contended, that the evidence proves gross negligence, in failing to light the street, and in failing to place guards or barriers at the slip, to protect pedestrians from falling or walking into the water.

It appears that the slip was crossed by a bridge, which was much narrower than the street. The sidewalks on each side of the street ran to near the slip and then curved, so as to pass on the bridge, so that, in approaching, a person failing to follow the curve would, by pursuing a direct line, walk into the slip.

There was no railing, wall or guard, on the outer edge of this curved sidewalk leading to the bridge. Hence, a person proceeding straight forward would meet with no obstruction to being precipitated into the slip. This was certainly extremely dangerous to persons passing in the dark. Persons would be liable to be precipitated into this slip, filled with mire and water, which, under any circumstances, would be dangerous to life, and extremely so in the dark, when objects could not be seen, and the means of escape so readily employed as in the light.

Where persons passing in the dark were not familiar with the locality and its hazards, they would be extremely liable to fall into the slip; and persons acquainted with the place, when passing in the dark, would be in great danger without extreme caution. This, we think, is fairly deducible from the evidence in the case. The bridge was within the corporate limits of the city, under its care, jurisdiction and control. Having permitted the excavation to be made, it was the manifest duty of the city to have made it secure, and fully protected the public against such hazards, by erecting railings, guard or barriers, suitable and sufficient to protect persons from walking into the slip, under any circumstances, in passing. Or even if it had been a natural channel, or one made before the limits of the city were extended, so as to embrace this slip, the duty would have been the same. One of the objects of creating the city government was, among others, to improve the streets and pass-ways, so as to render them commodious, easy and safe to all persons using them. Having failed in this duty, the city must be held responsible for all damages resulting therefrom.

An attentive consideration of the evidence shows, that the jury were warranted in finding that deceased came to his death from the want of necessary and proper protections at this bridge. He was undeniably drowned at that place, and when last seen he was at a short distance from the bridge, and when he left Mr. Denny's he seems to have proceeded in the direction of the bridge. It is but reasonable, then, to suppose that it was on that occasion that he fell into this pool and was there

drowned. All of the circumstances tend to this conclusion, and we are not disposed to disturb the finding of the jury.

The city having failed to secure this passage over this pool against danger, and this being a neglect of a duty, it is liable under the statute for the damages sustained by the loss of the life of deceased. And being so liable we deem it unnecessary to determine whether appellant was derelict in their duty in failing to light this street. We, therefore, refrain from expressing any opinion on that question.

It was also urged that the court below erred in permitting evidence to be introduced showing the noxious condition of the water in this pool. It tended to show that the danger to life would be enhanced by getting into a body of water so polluted and emitting such noxious gases. If they were calculated to suffocate persons brought within their influence, then they increased the peril to life and diminished the chances of escape. And if this was the case, then the duty of the city to erect protections to prevent persons from falling in was increased, and the omission of the duty was more negligent than if the water had been free from such exhalations. This evidence was therefore admissible for the purpose of showing the greater degree of care required of the city in protecting the public. Had appellant desired it, the court below would have instructed the jury that this was the only purpose for which this evidence was admissible.

The instructions given by the court below were substantially correct, and we think did not mislead the jury in their finding. The judgment of the court below must be affirmed.

*Judgment affirmed.*