61   287
29a  475
29a  502
61   287
39a  430

## THE CITY OF GALESBURG

### *v.*

## ERASTUS D. HIGLEY.

1.  MUNICIPAL CORPORATION—*power over streets and sidewalks.*  Where the city charter clothes it with power, and it is the duty of the city, to prevent obstructions from continuing in the streets and sidewalks, it is gross negligence, if known to the city officials, to permit an opening in a sidewalk, made to admit light into the basement of an adjoining building, to remain a long time without gratings or other protection, and to permit large goods boxes to remain piled upon the opposite side of the walk so as to impede and endanger the safety of persons passing along the walk; and when continued a great while, the city will be charged with notice of the defects and obstructions, and is liable for injuries produced thereby.

2. INSTRUCTIONS—*finding of jury under.* An appellate court will not say a jury has disregarded an instruction when the evidence is conflicting, and it is a fair question for the jury to determine whether they shall believe the witnesses on the one side rather than the other; nor will the court say that the witness was impeached because other witnesses testified to contradictory statements said to have been made by him, especially when the contradicting witnesses are not positive in their testimony, and the witness sought to be impeached is corroborated by other evidence.

3. DAMAGES—*verdict.* A verdict will not be set aside in this class of cases because the damages appear to be large. They must be excessive and palpably so, before the court will interfere.

APPEAL from the Circuit Court of Knox county ; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WILLIAMS, CLARK & CALKINS, for the appellant.

Messrs. CRAIG & HARVEY, and Messrs. HANNAMAN & KRETSINGER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case brought by appellee, in the Knox circuit court, against appellant, to recover for injuries sustained from his falling into an opening in the sidewalk of one of the public streets of the city.

It appears that the opening was about three feet long, twenty inches wide, and eighteen deep, and was on the side of the walk next the wall of a building, and was made for the purpose of admitting light through a window into a cellar under the building. By the fall, his left wrist was sprained, and he was perhaps otherwise bruised. It seems that appellee was returning from the railroad depot, and it was dark and raining at the time, and to avoid getting wet he swears he was running on the sidewalk, and came in contact with some boxes on the outer edge of the sidewalk, and turning to the other side of the walk, to avoid the boxes, he fell into the opening. The accident occurred between eight and nine o'clock in the evening.

The boxes were of large size, and were nearly opposite to the opening. The opening had been covered by iron grating, which had for a long time been removed, and it was at the time wholly unguarded by railing or other protection.

A careful examination of the evidence shows that the injury was serious, painful and more than probably, permanent in its character, and if not, that it will be slow in recovering and require a great while for the cure to become complete.

The grounds most strongly urged for a reversal are, whether the city was negligent in failing to remove these obstructions, and in not having the opening closed or secured against danger of accident.

The city is clothed with ample power, and it is its duty, to prevent such obstructions or the keeping open such pits on the public and traveled streets of the city. Permitting this dangerous obstruction and defect on this sidewalk was gross negligence, if known to the city. That its officials must have known of this and two other openings in the sidewalk in the front of the building to accommodate it with light, there can scarcely be a doubt. They had been unguarded for months, if not years, previously, and the city must be presumed to have had notice of their condition; and that they were dangerous is clearly shown, as, previous to the injury of appellee, some four or five persons had fallen into one or another of them whilst passing in the night time.

We regard the evidence on this question as clear beyond doubt, although some witnesses may say they do not regard them as dangerous. The fact that so many persons had previously fallen into them is more conclusive than mere opinion to the contrary.

It is next insisted that the evidence fails to show that the city had notice that there were boxes on the sidewalk; that they may have only been placed there a few hours previously; and the evidence of one of appellant's witnesses is referred to in support of this theory. He gives it as his opinion that the box against which appellee ran had that evening fallen upon
19—61ST ILL.

the walk from a pile outside. Why he should advance such an opinion, he does not state, and no reason appears in the evidence, unless it be to exculpate himself from neglect of duty in not removing the obstruction, and to relieve the city from liability. There is nothing shown from which we can reasonably conclude that such a thing would probably occur. All bodies, according to the laws of nature, remain at rest, unless sufficient force is applied to overcome such a tendency, and yet it is insisted that these boxes may have departed from that natural state without any cause being assigned.

But there is abundant evidence that boxes were on the sidewalk at various times prior to the accident. One witness says they were there all of the time. From this evidence the jury were fully warranted in the inference that these boxes had been there a sufficient length of time to charge the city with notice. They had the right to believe that, if it was usual for boxes to remain there, these had been there long enough for those having the repair of the streets in charge to have known it, and removed them; and with all of this circumstantial evidence against the city, there was no evidence on its part to show that they had been there but a few hours, as it is contended they may have been—if there only a few hours, it could no doubt have been proved by persons occupying the adjacent buildings.

We fail to perceive how the jury could have reasonably arrived at any other conclusion than they did.

It is likewise insisted that the jury disregarded appellant's instructions, and particularly the fifth. It informs them that, in determining the weight to be given to the testimony, they should take into consideration the fact, if it appeared, that appellee was contradicted by a number of witnesses, who are named, as to his statements respecting the injury a short time after it occurred, and if they believed that he had sworn willfully false as to any material fact, then they were at liberty to disregard his evidence as to any and all of his statements not sworn to by one credible witness. The last clause of this instruction is

clearly erroneous, as a witness may be, and frequently is, as fully corroborated by circumstantial evidence as by that of a witness.

But on examining the evidence of the witnesses referred to in the instruction, we are not prepared to hold the jury did wrong in believing appellee's version of the occurrence. They had before them the undisputed fact that he had fallen, and that he was seriously injured; and the witnesses are by no means positive as to what he did say. Again, all know that it is easy for a conversation to be misunderstood, or not remembered, and one of the witnesses seems to have made it his business to seek for admissions from appellee. One of them first says that appellee told him he did not know that he was hurt until the next evening, whilst on his cross examination · he says appellee said he was not aware that he was seriously hurt until that time. This is slender ground upon which to claim a contradiction.

Another witness states that appellee, at the time the accident occurred, stated that he fell on the palm of his hand, and the two physicians say they so understood him when he called on them for advice. Even admit this to be true, still it does not follow that he willfully swore falsely. The fall only occupied an instant of time, and being unexpected, he would not remember all of the particulars with clearness and perfect distinctness, and may, on reflection, have concluded that it occurred differently. But we are not prepared to hold such a fact so material that it should destroy his entire testimony, when we have concurrent evidence that he fell, in all other particulars, as he states, and that he was then injured. His evidence as to all material points was sustained by corroborating evidence, and the jury acted under the instructions.

It was urged that the injury resulted from bad treatment and malpractice in managing the injury. The physicians disagree as to whether the injury was the natural result of the fall. The appellee's medical witnesses seem to have testified as fairly and intelligently as those introduced by the city, and

we can not hold that the jury were required to disregard the evidence of appellee's witnesses rather than that of appellant's. The injury was received, and the jury had before them evidence of the condition of appellee's hand, which was shown to have been paralyzed and useless, and the presumption would be that it was the result of the fall, if not shown to have been produced by some other cause, and we are unable to say that such other cause has been shown.

It is lastly urged that the damages are excessive. Whilst they are perhaps high, still they are not so excessive as to require a reversal. When we consider that appellee's hand is paralyzed and can not be used, and when all of the evidence fails to show that it is probable that it will be restored, we can not say that $3000 is grossly excessive. To be deprived of the use of a hand permanently is a great and grevious loss to any one, and it becomes more so to a person who is dependent upon his labor for the support of himself and a family. The mere fact that we might not have found so large a sum had we been jurors, is not ground for undertaking to control the action of a jury in assessing damages, and we can not say the finding is grossly excessive; and the judgment of the court below is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE LAWRENCE took no part in the decision of this case.