Henry Shoup *et al.*

*v.*

Benjamin F. Shields *et al.*

*Filed at Springfield March 26, 1886.*

1. Trespass *quare clausum fregit—as a possessory action—proof of title in the plaintiff.* In trespass *quare clausum fregit* for damages in cutting down the plaintiff's hedge, it is not necessary that he prove title to the land by a chain of conveyances from the government down to himself. It is enough for him to show possession of the premises alone, to entitle him to recover.

2. SAME—*justification — opening highway—cutting down a hedge not within the lines of the highway.* Parties acting as commissioners of highways can not justify their entry upon the close of one and cutting down a hedge thereon, as having been done by them in opening a public highway laid out, where the proof shows that the greater part of the hedge cut down was not within the lines of the highway.

3. PARTIES—*in trespass for cutting down a hedge wholly on the land of one person.* Where a hedge is not on the line between two tracts owned by different persons, but wholly on the land of one, the latter may maintain an action for its injury, in his own name. It is only when a hedge is on the line between different owners, that the question of co-tenancy as to it can arise.

APPEAL from the Circuit Court of Sangamon county; the Hon. W. R. WELCH, Judge, presiding.

Mr. N. M. BROADWELL, for the appellants:

No attempt was made to show title deduced from the government, but appellees sought to prove title to the *locus in quo* by evidence of possession and payment of taxes under color of title; but the evidence failed to show possession east of the hedge, or even any adverse claim to the land east of the hedge.

If the parties are to be held to this hedge as a monument established by them to mark the line between them, it must follow that the hedge was on a mathematical line, and, in contemplation of law, on the side of each adjoining tract, or was a division fence, deriving its support from each adjacent tract, and therefore owned by the proprietors of the adjoining lands as tenants in common. If that is so, the hedge was not on the close of either. *Ferris* v. *Van Buskirk,* 18 Barb. 397.

All the tenants in common must join in an action for an injury to the common property. *Merrill* v. *Berkshire,* 11 Pick. 269; *Austin* v. *Hall,* 13 Johns. 286; *Gilmore* v. *Wilbur,* 12 Pick. 120; Freeman on Co-tenancy, sec. 347.

The evidence tendered in regard to the laying out of the road, should have been admitted. The order laying out the road was in due form. This order is *prima facie* evidence of

the truth of its recitals, and that the proceedings of the commissioners were regular in all respects. Rev. Stat. chap. 121, sec. 52; *Shinkle* v. *McGill,* 58 Ill. 422; *Wiley* v. *Town,* 59 id. 306; *Hankins* v. *Calloway,* 88 id. 155.

Messrs. PATTON & HAMILTON, for the appellees:

It was not necessary to show a continuous chain of title from the government. Dr. Shields, the father of appellees, went into possession of the land on which the hedge was located, under the Royal deed. His possession was coëxtensive with the description in the deed. *Davis* v. *Early,* 13 Ill. 192; *Fairman* v. *Beal,* 14 id. 244; *Brooks* v. *Bruyn,* 18 id. 539; *Goeway* v. *Urig,* id. 238; *Dills* v. *Hubbard,* 21 id. 328; *Brooks* v. *Bruyn,* 22 id. 572.

Dr. Shields and appellees had such possession as would enable the latter to maintain this action. *McLean* v. *Farden,* 61 Ill. 106; *Chicago* v. *McGraw,* 75 id. 566.

The hedge being upon appellees' land, no question of co-tenancy arises, and therefore the cases cited have no application.

There was no error in refusing to admit the proceedings purporting to lay out a highway, as the hedge destroyed was not within such road. It devolved upon appellants to show that the *locus in quo* was a public highway. *McIntyre* v. *Storey,* 80 Ill. 127; *Caldwell* v. *Evans,* 85 id. 170; *Weed* v. *Sibley,* 40 Me. 356.

Appellants must show that every requirement of the statute was complied with, in order to justify their act in destroying the hedge. In other words, they must show that there was a legally established road, and that the hedge was between the lines, defining its width. *Dunning* v. *Matthews,* 16 Ill. 308; *Guptail* v. *Teft,* id. 365; *Taylor* v. *Marcy,* 25 id. 518; *Caldwell* v. *Evans,* 85 id. 170; *Trozell* v. *Rogers,* 82 id. 109; *Commissioners* v. *People,* 2 Bradw. 24; *Linblom* v. *Ramsey,* 75 Ill. 246.

Per CURIAM: This was an action of trespass *quare clausum fregit,* to recover damages for entering the close of the plaintiffs and cutting a hedge thereon. The plaintiffs recovered a verdict and judgment for $204, and the defendants appealed.

It is insisted the evidence does not support the judgment, because appellees failed "to show a fee simple title to the land in dispute by regular chain from the government" down to them, but relied upon a deed of the land from Joseph B. Royal, dated October 19, 1844, and possession and payment of taxes thereunder ever since the date of the deed. The jury were justified in finding from the evidence that the land upon which the hedge was situated was embraced within the description in the Royal deed; that under that deed to him, made October 19, 1844, Dr. Shields, the father of appellees, immediately went into possession of the land, living thereon, and continued in such possession to the time of his death, paying the taxes on the land every year, and that ever since the death of their father, appellees had been in such possession, and had continuously paid the taxes on the land. This evidence, as respects title or possession, was sufficient to enable appellees to recover. It was not necessary to show a continuous chain of title from the government. It would have been enough to have shown no more than possession. The possession was coëxtensive with the description in the deed.

The premises were two forty-acre tracts of land lying together, north and south of each other. One Brunk owned the two corresponding forties adjoining on the east. It was a question of disputed line between the adjoining occupants. Dr. Shields and Brunk appear to have set out the hedge together. Some point is made upon this, that Shields and Brunk were co-tenants, and Brunk should have joined in the action. The preponderance of the evidence shows the hedge to have been on the land of Shields,—that it was not on the line between the two tracts,—and the question of co-tenancy does not arise in the case.

The deed from William Ramsey to David Brunk, of date May 26, 1836, was properly excluded, as it did not embrace the land in controversy.

Appellants attempted to justify the alleged act of trespass as having been done by them as highway commissioners, in the opening of a public road which had previously been laid out. It is enough to say upon this head, that the evidence shows the hedge, at least in part, was not within the lines of the road. Enos, the surveyor, who, at the instance of the highway commissioners, laid out the road and made a survey and plat of it, testified that he made a survey of the road on the line dividing the east and west halves of the quarter section; that at the north end the hedge was twenty-five or thirty feet west from the centre of the road, and at the south end, three or four feet. Appellees' land being on the west, and the road forty feet wide, this would leave the hedge, at the north end, five or ten feet outside of the road, though at the south end it would bring the hedge within the west line of the road. Other testimony in the case made the hedge to be entirely outside of the road.

We perceive no substantial objection to the instructions as applied to the evidence.

It is complained that the damages are excessive. The verdict was for $204. There were one hundred and two rods of the hedge. The testimony was conflicting as to the value of the hedge, and as to how much of it was on appellees' land. Several witnesses testified the hedge was worth three dollars per rod. We can not say the damages are excessive.

The judgment will be affirmed.

*Judgment affirmed.*